**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 08-CR-30217-MJR |
| ) | |
| SCOTT LEE JOHNSON, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

**A. Introduction and Background**

On October 22, 2008, Johnson was indicted for knowingly and intentionally distributing five kilograms or more of cocaine (Count 1) and being a felon in possession of a firearm (Count 2) (Doc. 12). The Government also included two forfeiture counts in the complaint, seeking all property constituting or derived from the alleged criminal offenses (Count 4) and seeking forfeiture of firearms and ammunition in Johnson's possession (Count 5).

On December 17, 2008, Johnson filed a motion to suppress physical evidence obtained from 5706 Westmoreland, Washington Park, Illinois on the grounds that the search warrant was not supported by probable cause (Doc. 38). The Government submitted its response on December 24, 2008 (Doc. 43).[1] On January 15, 2009, the Court held a hearing on the motion to suppress.

---

[1] Co-defendant Lamb also filed a motion to suppress (Doc. 45) wherein she sought to adopt the exact same arguments as Johnson, only with respect to the charges against her. However, the Court denied this motion stating that it would not permit the mere adoption by reference of a co-defendant's motion to suppress (Doc. 46). Instead, Lamb was given an opportunity to file a motion specifically stating any grounds for suppression with respect to her in particular. Lamb opted not to file any such motion.

For the reasons thoroughly explained below, the Court hereby **DENIES** Johnson's motion to suppress (Doc. 38).

## B. The Search Warrant's Supporting Affidavit

On April 4, 2008, law enforcement officers sought a warrant to search the house at 5706 Westmoreland for the purpose of locating controlled substances, drug paraphernalia, firearms, and items or records related to drug trafficking (Doc. 43-2). The application for the search warrant was accompanied by an affidavit from FBI Special Agent Nicholas J. Manns.

The affidavit traces law enforcement's investigations of Johnson dating back to 1994, when he was arrested and later pled guilty to cocaine distribution charges (Doc. 43-2, ¶ 4). Agent Manns then recounts specific information obtained in March 2008, both from FBI investigations and confidential informants (CIs), indicating that Johnson and his nephew, Marlon Lee, had been involved in cocaine trafficking since at least 2006 (¶¶ 6, 9). According to CI statements, Johnson operated a restaurant called "Best Fish House," which he used as a cover for his cocaine operations (¶ 7, 14–18). Specifically, one CI indicated that in 2006, he made two large cocaine purchases from Johnson via one of his associates (¶ 10–12). Another CI involved in those transactions corroborated the story and provided additional information linking Johnson to cocaine trafficking during this period (¶ 13).

On April 1, 2008, DEA Agents and Deputy U.S. Marshal Thomas Woods met with a third CI, who stated that he or she had been employed by Johnson at the Best Fish House for 2 to 3 years and provided a detailed account of Johnson's and Lee's recent and ongoing cocaine transactions there (¶¶ 14–18). In particular, the CI stated that a Hispanic man driving a tractor trailer periodically delivered cocaine to the restaurant (¶ 16). The CI also noted the presence of various items associated with drug trafficking—two safes in the restaurant, high tech video security

equipment, and large sums of cash handled by Johnson and Lee (¶¶ 14–18).

On April 2, 2008, officers interviewed a fourth CI who had "provided reliable and corroborated information to [Deputy Marshal] Woods on numerous prior occasions. Information from [the CI] has lead (sic) to numerous prior arrests by federal authorities" (¶ 20). This CI stated that over the previous 2 years, he or she purchased cocaine from Lee (¶ 20). Usually, these transaction took place at the Best Fish House (¶ 20).

The CI also stated that he or she made other purchases directly from Johnson (¶ 21). The CI claimed that in the week prior to April 2, 2008, the CI purchased multi-ounce quantities from Johnson on four separate occasions (¶ 21). All four of these purchases were reportedly made at 5706 Westmoreland (¶ 21). The CI stated that Johnson made the transactions through the door of the residence at that address during the evening hours (¶ 21). The CI also said that on April 1, 2008, Johnson told the CI that he was expecting a large shipment of cocaine to arrive in the near future (¶ 21). Officers believed that this shipment arrived on April 3, when another CI informed them that the aforementioned truck driver had been at the restaurant that day and was still nearby (¶ 19).

On April 4, 2008, the affidavit states that DEA and FBI personnel began surveillance on 5706 Westmoreland and coordinated a controlled purchase of cocaine using the fourth CI (¶ 23). With currency provided by law enforcement, the CI was able to obtain several ounces of cocaine from the residence (¶ 23). Additionally, surveillance spotted a car at 5706 Westmoreland, which remained at the residence for only a short time before leaving (¶ 24). That vehicle was soon stopped, and a subsequent search of one of the occupants revealed 4.5 ounces of cocaine (¶ 24).

The affidavit also includes a lengthy discussion of Agent Manns's general knowledge and understanding of the methods of drug traffickers (¶¶ 26–43).

On April 4, 2008, Magistrate Judge Donald G. Wilkerson issued the warrant

permitting the search of 5706 Westmoreland based on this affidavit. The search was conducted later that day.

## C. Analysis

Johnson's general contention is that the search warrant's supporting affidavit is lacking specific information related to criminal activity at 5706 Westmoreland and is instead based on conclusory statements and generic information about drug trafficking in general.[2] It should be noted that Johnson's motion does not challenge any of the facts or allegations set forth in the affidavit; he simply argues that the statements therein are insufficient to support a finding of probable cause.

The Fourth Amendment guarantees the right against unreasonable searches. However, a search is permissible where it is conducted pursuant to a warrant issued upon probable cause. In determining whether there is "a fair probability that contraband or evidence of a crime will be found in a particular place," a judge must consider the totality of the circumstances set forth before him. *Illinois v. Gates*, **462 U.S. 213, 238 (1983).** Where the judge only considered the supporting affidavit, as was the case here, "the warrant must stand or fall solely on the contents of the affidavit." *United States v. Koerth*, **312 F.3d 862, 866 (7th Cir. 2002).**

The Seventh Circuit has explained that

A magistrate's determination of probable cause is to be given

---

[2] The generic motion to suppress also alleges a number of other bases for suppression of the physical evidence, including: absence of probable cause to support the warrant, the presence of false statements in the warrant's supporting affidavit, improper execution of the search warrant because the search was not conducted by duly authorized federal agents, and the failure of officers to announce their identity and authority upon entering the residence. However, the supporting memorandum of law only addresses the question of whether the warrant's supporting affidavit was sufficient for a finding of probable cause. As a result, the Court need only address the probable cause argument, as Johnson has not developed any of the other issues in his motion or at the hearing.

4

> considerable weight and should be over-ruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated.

*United States v. Otero*, 495 F.3d 393, 397–98 (7th Cir. 2007) (quoting *United States v. Wiley*, 475 F.3d 908, 914–15 (7th Cir. 2007)). In determining whether an informant's information is sufficient for a finding of probable cause, district courts consider four factors:

> (1) the extent to which the police have corroborated the informant's statements; (2) the degree to which the informant has acquired knowledge of the events through firsthand observation; (3) the amount of detail provided; and (4) the interval between the date of the events and police officer's application for the search warrant.

*Koerth*, 312 F.3d at 866 (citations omitted).

With respect to the search of 5706 Westmoreland, the information provided by the fourth CI as related in the affidavit, combined with the other background information from other CIs, clearly supports the Magistrate Judge's finding of probable cause. First, the affidavit specifically notes that the fourth CI was reliable in the past and provided information that led to various drug convictions. Additionally, the informant gave first-hand accounts of Johnson's drug dealing activities, including four transactions between the informant and Johnson in the week prior to the issuance of the warrant.

This information was corroborated when officers conducted surveillance on 5706 Westmoreland, during which officers observed a vehicle arrive at the house for a short time. When the officers conducted a traffic stop on that vehicle, they located 4.5 ounces of cocaine on one of the occupants. This indicated that a drug sale may have been conducted at 5706 Westmoreland. However, the most compelling information stems from the controlled buy at 5706 Westmoreland, from which the CI was able to purchase several ounces of cocaine, thereby confirming that cocaine

was being dealt at that specific location. The search warrant was obtained on the same day the controlled buy was conducted, so there is no concern that the events were too distant in time to support the issuance of the warrant.

Johnson's contention that the affidavit lacks particularized facts supporting a determination of probable cause to search 5706 Westmoreland simply ignores the actual statements therein. The Magistrate Judge clearly did not solely rely on Agent Manns's general explanation of drug trafficking trends. Given the overall content of the affidavit, and particularly the information specifically pertaining to 5706 Westmoreland, the Magistrate Judge "reasonably conclude[d] that the items sought to be seized [were] associated with the crime and located in the place indicated." **Otero**, 495 F.3d at 397–98 **(quoting *Wiley*, 475 F.3d at 914–15).**

### D. Conclusion

For the reasons thoroughly explained below, the Court hereby **DENIES** Johnson's motion to suppress (Doc. 38).

**IT IS SO ORDERED.**

**DATED this 20th day of January 2009.**

                                                  **s/ Michael J. Reagan**
                                                  **MICHAEL J. REAGAN**
                                                  **United States District Judge**